UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re:

STANLEY EUGENE AMOS　　　　　　　　　　　　　　Case No.: 05-16253

　　　Debtor.

STANLEY EUGENE AMOS,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　Adv. No.: 06-01038

NATIONAL PAYMENT CENTER,

　　　Defendant.

# ORDER DECLARING STANLEY AMOS'S DEBT TO NATIONAL PAYMENT CENTER NONDISCHARGEABLE

　　　David L. Ratcliffe, Attorney for Debtor
　　　Eugene A. Seidel, Attorney for National Payment Center
　　　Lynn H. Andrews, Chapter 7 Trustee

This matter came before the Court on Stanley Amos's claim for dischargeability pursuant to 11 U.S.C. § 523(a)(8). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying claim for the dischargeability of the debt owed to National Payment Center.

## FACTS

Stanley Amos, the debtor, incurred his student loans between 1991 and 1996, while he was a student at the University of South Alabama ("South") pursuing a degree in Criminal

-1-

Case 06-01038　　Doc 14　　Filed 08/04/06　　Entered 08/04/06 16:42:27　　Desc Main
　　　　　　　　　　　　　Document　　　　Page 1 of 14

Justice. Amos was distracted by his divorce and thus, did not complete his degree. He is now 60 years old.

Amos has never received formal job training. His employment history includes careers as a cook, truck driver and truck dispatcher. Prior to entering South, his annual income fell between $10,000 to $12,000. After leaving South, Amos returned to truck driving. He worked for nearly two and a half years before suffering from ruptured discs caused by "dollying up" a trailer load while on the job. He left work for almost three years, returning to the company as a dispatcher earning around $600 gross a week.

In November of 2005, Amos was involved in an auto accident in Florida while working for the same trucking company. He was injured in the accident. He experiences continual neck pain. He suffers from tremors and muscle spasms. Amos's symptoms are aggravated if he either sits or stands for prolonged periods of time. He has lost most function in his right arm and leg. His right leg drags necessitating the use of a walker. His right hand cannot fully open. He can no longer write and was forced to learn how to handle a phone with his non-dominant hand. Amos has also experienced slight side effects from his medication: his pain medication upsets his stomach; his sleep medication makes him drowsy and his spasm medication is not always effective. Amos testified that on a scale of one to ten his pain is usually a four but can reach a seven or nine. Atmospheric conditions such as cold worsen his condition. His neurosurgeon recommended surgery on his neck be performed as soon as possible, but Amos cannot afford this corrective surgery. He has not yet received a determination he is permanently and fully disabled.

These injuries prevent Amos from continuing his employment as a dispatcher, which requires extensive computer and telephone work. As a dispatcher, Amos would need to handle

more than 100 calls a day, but he cannot quickly dial a phone with the same hand used to hold it. Additionally, a dispatcher must continually log information, an impossible task for Amos who can neither write nor efficiently type. Amos cannot work as a truck driver since he has difficulty entering and exiting trucks as well as shifting or opening their doors.

As a result of the automobile accident, Amos received a settlement of $140,000. After paying attorney's fees, Amos received $88,000. After paying off his child support obligations and rent, approximately $65,000 remains at this time. It is his sole source of income. He plans to appeal the denial of his first Social Security disability claim, and his worker's compensation claim is still pending. He could not estimate what income these claims, if successful, might provide.

Amos has many monthly expenses. He pays $325 to $350 for his three medications. He also takes a blood pressure medicine which will cost an additional $250 in the near future. Having recently moved to Texas, he splits the rent with his girlfriend. His portion is $450. His utilities cost between $150 and $175. He pays $89.95 for a cell phone. Clothes generally cost him at least $100. Gas costs between $100 and $200, whereas car insurance is $265. He generally incurs about $50 in credit card debt. He also pays at least $75 for vitamins as part of a health plan to which he committed. He spends around $400 for food because he cannot cook and must eat out often.

Amos has non-monthly expenses as well. He drives a 1992 Mercedes 300E, which will soon need radiator repairs. He has around $6000 in post-petition hospital bills and continues to amass medical bills. He owes his mother more than $5000 for living expenses she lent him in the past few months. Amos testified he feels morally obligated to pay off the debts of his

-3-

Case 06-01038   Doc 14   Filed 08/04/06   Entered 08/04/06 16:42:27   Desc Main
Document   Page 3 of 14

recently deceased son, although he admitted to having no legal obligation to do so. Amos also owes his ex-wife for her financial support after his accident.

Amos has not used any of the settlement proceeds to pay NPC, and the parties stipulated the amount of debt is $90.395.

## LAW

The issue of this case is whether debtor's student loan debt to National is excepted from discharge in his Chapter 7 bankruptcy case. The purpose of the Bankruptcy Code's discharge provisions is to allow insolvent debtors a chance to "make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Chase Manhattan Bank v. Ford (In re Ford)*, 186 B.R. 312, 316 (Bankr. N.D. Ga. 1995)(quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). However, this opportunity is only afforded to the honest, but unfortunate, debtor. *Id.* To make sure only honest debtors get the benefit of this fresh start, the Code provides exceptions to its discharge provisions. These exceptions to discharge are contained in 11 U.S.C. § 523.

The exception relevant to this case is contained in § 523(a)(8), which provides in pertinent part:

> (a)  A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
> 
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
> 
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> 
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual [.]

11 U.S.C. §523(a)(8). To determine "undue hardship," the Eleventh Circuit has "adopt[ed] the standard set forth by the Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)(per curiam)." *In re Cox*, 338 F.3d 1238, 1240 (11th Cir. 2003). Under this three-part test,

> the debtor must show '(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [him]self or [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.'

*Id.* At 1241 (quoting *Brunner* at 396). The Court heralded this test for its ability to analyze the essence of "undue hardship," "an inability to pay that is likely to continue for a significant time." *Id.* at 1242. An "overly restrictive interpretation of the Brunner test" must be avoided if the Bankruptcy Code's goal of providing a "fresh start" is to be achieved. *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1308 (10th Cir. 2004). *Cox* is the Eleventh Circuit's sole foray into the application of the *Brunner* test. There have been a multitude of cases addressing the three prongs of the *Brunner* test in other courts, however.

I. Ability to Maintain "Minimal" Standard of Living While Repaying Loan

A "minimal" standard of living does not necessitate subsisting at the national poverty level. *In re Lokey*, 98 Fed. Appx. 938, 941 (4th Cir. 2004)(quoting *Correll v. Union Nat'l Bank of Pittsburg (In re Correll)*, 105 B.R. 302, 306 (Bankr. W.D. Pa. 1989). There is a split of authority among the courts over what constitutes the amount minimally necessary to live. One interpretation is that the amount covers food, shelter, clothing and medical treatment. *See In re*

-5-

*Hornsby*, 144 F.3d 433 (6th Cir. 1998). Generally, income is compared to expenditures, minus any unnecessary expenses, to determine the amount of disposable income. If it is sufficiently low, "a hardship exists from which a debtor may be discharged of his student loan obligations." *Lokey* at p.941.

This case is different from most involving student loan dischargeability because the debtor has one finite source of income. He is no longer able to work. Therefore, his sole source of income is a judgment he received following an automobile accident. This amount is presently near $65,000. His settlement will cover his current expenses, addressed below, for close to two and a half years (28.8 months). He hopes to invest some part of the settlement to ensure its stream of income will continue to support him in the future. Debtor is appealing the Social Security disability and worker's compensation claim denials. *Cf. In re Hinkle*, 200 B.R. 690, 693 (Bankr. W.D. Wash. 1996)(although timing and net were not yet determined, receipt of money was certain from a personal injury claim so the Court concluded scheduled payment of $264.97 was manageable even though debtor's net income exceeded the expenses by only $58) *and In re Armesto*, 298 B.R. 45 (Bankr. W.D. N.Y. 2003) (analysis was made with debtor's current income and expenses although a personal injury recovery was possible).

Debtor outlined his monthly expenses: $325 for three of his medications, $250 for his blood pressure medicine, $450 for rent, $400 for food, $265 for car insurance, $150 for utilities, $100 for gas, $89.95 for his cell phone and $75 for his vitamins.[1] His total monthly expenses equal $2254.95. His medications are approximately 25% of his expenses.

---

[1] The Court has chosen the lower end for any expenses presented by the debtor in a range because the burden of proving this prong is on the debtor. The difference at most is $150, which would not change the outcome of the analysis.

Debtor's lifestyle seems extravagant, at first glance.  Spending $400 a month on food is not frugal, but the debtor testified his injuries have severely diminished his ability to cook for himself and thus necessitate his eating out often.  No testimony was elicited to show whether he economizes during these meals or what type of restaurant he frequents.  However, with 90 meals in an average 30-day month, $400 leaves less than $5 to be spent on each meal.

Debtor recently moved to Texas to live with his girlfriend, and the $450 represents his share of the rent.  He did not indicate if the cost of utilities was also being shared.  More information is needed to properly assess whether this rent is a reasonable amount. *See In re O'Hearn*, 339 F.3d 559, 565-66 (7th Cir. 2003) (chastising the bankruptcy court's acceptance of debtor's rent payment to live in his fiancee's house when it was nearly $500 more than a 2-bedroom apartment in the area and no evidence was presented that the costs of living alone would be greater).  No evidence was offered concerning the housing market in Houston or even the quality of their dwelling.

There is a split of authority over which expenses are unnecessary.  It is almost certain someone without credit cards, cable, cell or home internet will be considered to have only necessary expenses. *See Lokey* at p.941.  Many courts have declined to discharge student loan debt where the debtor's budget included items such as cable television, a new car or private schooling for a child. *See Commonwealth of Va. State Educ. Assistance Auth. V. Dillon*, 189 B.R. 382, 385-86 (Bankr. W.D. Va. 1995); *In re Faish*, 72 F.3d 298, 307 (3rd Cir. 1995); *Perkins v. Vermont Student Assistance Corp.*, 11 B.R. 160-161 (Bankr. D. Vt. 1980); *In re Conner*, 89 B.R. 744, 749 (Bankr. N.D. Ill. 1988).  However, courts do not always require a debtor to discard all unnecessary items. *See In re Rifino*, 245 F.3d 1083, 1088 (9th Cir. 2001) (no excess funds were

available for loan repayment although debtor's budget included tanning, cable television and a new car). It is reasonable to expect a cell phone to be of much greater use to someone struggling with this debtor's physical disabilities than a phone, especially since many consumers choose to have only a cell phone. It is more difficult to justify the $75 a month the debtor spends on vitamins, apparently a requirement under his health club obligations. He was most likely aware of his obligation to repay the student loan at the time he agreed to this additional obligation.

In reviewing the totality of the circumstances in the instant case, the Court finds debtor may be currently living above the minimal level of living but his fixed income is merely being depleted at a faster rate. Debtor cannot repay the student loan and maintain a minimal standard of living. The Court concludes the debtor met the first prong of the *Brunner* test.

II. Hardship Will Persist for Significant Portion of Repayment Period Due to Additional Circumstances

The second component of the *Brunner* test is "prospective in nature" requiring "exceptional circumstances beyond the debtor's current situation." *In re Frushour*, 433 F.3d 393, 401 (4th Cir. 2005). These circumstances must be beyond the debtor's control, not borne of free choice." *In re Oyler*, 397 F.3d 382, 386 (6th Cir. 2005). They must have been absent or diminished at the time the loans were applied for and must impact the debtor's future earning potential. *In re Gerhardt*, 348 F.3d 89, 92 (5th Cir. 2003) (quoting *In re Roach*, 288 B.R. 437, 445 (Bankr. E.D. La. 2003)). To demonstrate the circumstances will last for the requisite "significant portion of the repayment period," "the debtor must precisely identify [his] problems and explain how [his] condition would impair [his] ability to work in the future." *In re Tirch*, 409 F.3d 677, 681 (6th Cir. 2005) (citing *In re Brightful*, 267 F.3d 324, 330 (3rd Cir. 2001)).

This "demanding requirement [] necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." *Frushour* at p.401 (quoting *Brightful* at p.328)). Therefore, "courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism." *In re Alderete*, 412 F.3d 1200, 1205 (10th Cir. 2005)(*Polleys* 356 F.3d 1302 at p. 1310). The most commonly considered "additional circumstances" are "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *See Frushour* at p.401; *Oyler* at p.386. Debtor has a serious physical disability that prevents his employment, a lack of useable job skills and is close to retirement age.[2]

A permanent medical disability is not crucial for discharge of a student loan debt. *Polleys* at p.1311. The focus is whether the severity of the medical condition impairs the debtor's ability to repay for the duration of the obligation. *Hafner v. Sallie Mae Servicing Corp.*, 303 B.R. 351, 356 (Bankr. S.D. Ohio 2003). However, "substantial credible evidence" is required. *Id.* In the instant case, debtor submitted medical reports identifying his symptoms, diagnosing his condition and indicating its severity. *Cf. Tirch* at p.681 (no evidence was presented to show the debtor's

---

[2]The Ninth Circuit created a more lengthy list of likely additional circumstances which would cause a hardship to persist over time: (1) serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; (2) the debtor's obligations to care for dependents; (3) lack of, or severely limited education; (4) poor quality education; (5) lack of usable or marketable job skills; (6) underemployment; (7) maximized income potential in the chosen educational field, and no more lucrative job skills; (8) limited number of years remaining in [the debtor's] work life to allow payment of the loan; (9) age or other factors taht prevent retraining or relocation as a means of payment of the loan; (10) lack of assets, whether or not exempt, which could be used to pay the loan; (11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; (12) lack of better financial options elsewhere. *In re Nys*, 446 F.3d 938, 947 (9th Cir. 2006)(citations and footnotes omitted).

physical and mental problems would preclude her from working, no support was provided through competent medical or psychological evidence and there was no evidence her problems would persist). "By stipulating to the various medical letters and records introduced into evidence by the Debtor at trial and by failing to offer medical evidence or testimony of its own, [NPC] all but conceded the point that the Debtor is medically disabled from finding or obtaining employment that would enable [him] to repay [his] student loans." *In re Anelli*, 262 B.R. 1, 9 (Bankr. D.Mass. 2000). From his testimony and physical appearance, it was evident debtor's condition will prevent him from being gainfully employed. He experiences regular pain in his leg, has a stiff gait and depends on a walker. His right hand has very limited mobility. During cross-examination, debtor stated he had not yet received a determination of permanent disability, but, for purposes of this case, the Court concludes he is permanently disabled.

Age is an "additional circumstance" which may indicate the state of affairs will persist because an older "debtor simply has fewer years in which to develop [his] earning potential." *In re Hinkle*, 200 B.R. 690, 694 (Bankr. W.D.Wash. 1996). Debtor was 45 when he began college. He is now 60, and "given his age [alone], he might have a 'tough time' finding other work in the future." *O'Hearn* 339 F.3d 559 at fn.6 (referring to a debtor who was only 50 at the time of the hearing). Considering debtor's proximity to retirement age, any possible repayment plan would necessarily stretch past his seventies. *See In re McGinnis*, 289 B.R. 257, 267 (Bankr. M.D. Ga. 2003) ("A repayment period stretching into her 70's and 80's is unthinkable"). Limiting the repayment plan to the five pre-retirement years would require impossibly high payments due to the large amount borrowed. *See Anelli* at p.9 (limiting the length of the repayment expectancy period to the time till retirement age). Debtor's lack of retirement funds must be discounted

because "[b]y returning to [under]graduate school at the age of 45 and voluntarily assuming the debt, [the debtor] must have believed that he had future earnings potential." *O'Hearn* at fn.6 (quoting *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002))(the Court weighed this circumstance only because the debtor presented evidence he had devised a way to pay the loans in full prior to retirement age but was prevented from doing so by his accountant's embezzlement).

Debtor has been consistently employed since leaving school. His low-paying job history was not part of a voluntary decision not to maximize his earnings. *Cf. Oyler* at p.389 (debtor consciously chose to pursue a low-paying career after voluntarily incurring debt). Debtor has no marketable job skills, which could be used to find more lucrative employment. *Cf. Gerhardt* at p.92 (a relatively young well-educated debtor could obtain additional jobs in a number of areas due to his musical and teaching experience). He only has a GED; he has been a cook, truck driver and dispatcher. He testified he is unable to effectively use a computer or telephone and cannot stand for long periods of time. He is unfit for a more physical job.

Debtor's age and physical disabilities compel the conclusion he will remain unable to achieve employment in the future, and so, his financial straits will continue. The Court concludes the debtor met the second prong of the *Brunner* test.

### III. Good Faith Efforts to Repay the Loans

Failure to make a payment does not alone establish the requisite lack of good faith. *Polleys* 356 F.3d 1302 at p.1311. The third prong focuses on the debtor's "efforts to obtain employment, maximize income and minimize expenses." *Frushour* 433 F.3d 393 at p.402 (quoting *O'Hearn* 339 F.3d 559 at p.564). The debtor must prove he made efforts to "satisfy the

-11-

Case 06-01038   Doc 14   Filed 08/04/06   Entered 08/04/06 16:42:27   Desc Main
Document     Page 11 of 14

debt by all means- or at least *some* means- within the debtor's reasonable control." *In re Boykin,* 312 B.R. 915, 921 (Bankr. M.D.Ga. 2004)(quoting *Ulm v. Educ. Credit Mgmt. Corp.*, 304 B.R. 915, 922 (S.D. Ga. 2004).

This case is different from most because, neither the debtor nor NPC attempted to establish whether debtor made a good faith effort to repay the loan. NPC attached two Certificates of Indebtedness to its answer. According to these, debtor paid $549.44 on the series of loans between March 19, 1991 and August 19, 1996 and then $228.26 after the loans were consolidated on August 30, 2001 loan. Debtor testified he worked as a cook, truck driver and dispatcher between his time in school and the present. While he testified the long hours required of a cook motivated his career change, no evidence was presented whether these jobs represented his maximum income earning potential. Debtor outlined his current monthly expenses in his testimony, but no information was provided for his expenses or disposable income while he was employed. Therefore, there is no basis on which to judge whether he has led a frugal lifestyle and was still unable to make payments to his debt. Debtor's medical problems occurred years after he obtained the loans. No justification was given for his failure to make serious efforts to pay his student loans in the eight years since he defaulted on his first loan. *See In re England*, 264 B.R. 38, 50 (Bankr. D. Idaho 2001) ("A debtor's efforts to deal with unpaid students loans are critical to showing good faith.") There is also no evidence Debtor filed for bankruptcy in bad faith solely to discharge his student loan debts, since he testified to having pre-petition medical bills. *See Anelli* 262 B.R. 1 at p.10 (Debtor filed for bankruptcy in good faith since he had substantial other motives such as debts for taxes, medical services and credit cards).

Neither debtor nor NPC informed the Court whether debtor was granted forbearances. *See Alderete* 412 F.3d 1200 at p.1206 (debtor's failure to seek out loan consolidation options was

seen as evidence of failure to make good-faith effort). Forbearances reflect the "Government's decision that the debtor was unable and would be unable to pay the loan during the particular grace period." *In re Norasteh*, 311 B.R. 671, 677 (Bankr. S.D.N.Y. 2004). It is not bad faith to ask for or receive forbearance since it is a legal right. *McGinnis* 289 B.R. 257 at p.267. Government regulations make the obligation to repay student loans subject to deferment and forbearance provisions. *Norasteh* at p.677 (citing to 34 C.F.R. §685.207(a)(2)). If debtor had been granted a forbearance, the lack of payment during that time would not be evidence of a lack of good faith. Federal regulations do not require a borrower to "use his other assets to pay down his student loan as a condition to the grant of a deferment or forbearance." *Norasteh* at p.677. Once the deferment is granted, the debtor is not obligated to pay off the student loans with any other assets he may acquire in that time period. *Id.* There is no evidence debtor was in a forbearance period when he received his settlement.

There is a split of authority as to whether a debtor, who has not received a deferral or forbearance, is required to apply settlement proceeds toward student loan debt as part of a good faith effort to pay. *Cf. In re Vinci*, 232 B.R. 644, 652 (Bankr. E.D. Pa. 1999) (debtor received about $40,000 from an automobile accident but did not use any of the funds to pay her student loan debts choosing instead to borrow more money to fund further studies) *and Anelli* at p.10 (using divorce settlement to purchase and remain in her home rather than finding a smaller home or rental property did not outweigh evidence that student loan debt would inflict an undue hardship). Typically, the failure to use settlement proceeds is considered evidence of a lack of good faith effort to pay when the borrower has another source of income or chooses to only repay other creditors. *See In re Blair*, 291 B.R. 514, 516 (9th Cir. BAP 2003) (Debtor's use of $8,000

-13-

received as a settlement to repay loans from relatives, to bring her car payments current and to buy a new pair of glasses rather than to repay student loans was evidence she had not made a good faith effort to repay); *England* at p.50 (Debtor used a tax refund on dining out, home furnishings, a new computer and vacationing). *But see Hinkle* 200 B.R. 690 at p.694 (Failure to use a portion of her divorce settlement to pay down the loans was not deemed bad faith since the payment was received in a year of low income and the proceeds were not spent extravagantly). Debtor currently has no source of income other than his settlement. He did testify he intended to repay loans from his mother and wife as well as moral obligations on behalf of his son. His son's death is tragic, but if Debtor can afford to pay his son's debts, then he must be expected to pay his own.

A bankruptcy court does not have the equitable power to override the specific statutory language of §523(a)(8), which allows relief only to a debtor who shows "undue hardship." *Cox* 338 F.3d 1238 at p.1243. This Court finds the debtor did not meet his burden to show a good-faith effort to repay his student loan. Since the Court finds the debtor failed to prove the third prong of the *Brunner* test for undue hardship, the Court cannot discharge the debt.

Because Mr. Amos failed to prove he made a good-faith effort to repay his student loan debt, the Court finds that Mr. Amos's debt to NPC is not discharged. Accordingly, it is hereby ORDERED, ADJUDGED and DECREED that the debt of Stanley Eugene Amos to National Payment Center is declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(8). A judgment will be entered on a separate document pursuant to Bankruptcy Procedure Rule 9021.

Dated:   August 4, 2006

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

-14-

Case 06-01038    Doc 14    Filed 08/04/06    Entered 08/04/06 16:42:27    Desc Main
Document    Page 14 of 14